

**SIGNED this 19 day of October, 2007.**

_____
**JOHN T. LANEY, III
UNITED STATES BANKRUPTCY JUDGE**
_____

```
         IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                    COLUMBUS DIVISION

IN RE:                          :
                                :
Eloise Spratling                :     CASE NO. 06-40614 JTL
                                :
        Debtor.                 :           CHAPTER 13
                                :
```

**MEMORANDUM OPINION**

Before the court is creditor Wells Fargo's ("Fargo") objection to confirmation of Debtor Eloise Spratling's ("Debtor") Chapter 13 plan wherein Fargo's secured claim in Debtor's 2005 Chevrolet would be bifurcated into secured and unsecured portions and "crammed down." At issue is whether is whether Fargo holds a purchase money security interest ("PMSI") in Debtor's vehicle. It has previously

been determined by this court that the financing of negative equity does not preclude the lender from holding a PMSI in the vehicle.[1]

Debtor, through counsel, argues that the financing of an extended service contract and gap insurance precludes the lender from holding a PMSI. For the reasons set forth below, the Court holds that under Georgia law, in the context of the sale of a motor vehicle in accordance with Georgia's Motor Vehicle Sales Financing Act,[2] the term "price," as used in the Georgia definition of "purchase money security interest,"[3] includes any amount paid for an extended service contract or warranty, or for the acquisition of gap insurance. Fargo, therefore, holds a PMSI in the 2005 vehicle and its objection to Debtor's Chapter 13 plan will be SUSTAINED.

### FINDINGS OF FACT

On August 31, 2005, Debtor entered into a retail installment sales contract ("Contract") in the amount of $26,493.74 for a 2005 Chevrolet Malibu with Bill Heard Chevrolet. Wells Fargo supplied the financing for the purchase of the vehicle. As evidenced by the Contract, the purchase of the vehicle included $1493.00 for an extended

---

[1] *See In re Graupner,* 356 B.R. 907 (Bankr. M.D. Ga. 2006)(Laney, J.).
[2] O.C.G.A. § 10-1-30 to -42 (2000).
[3] O.C.G.A. § 11-9-103(a)(2) (2002).

service contract and $426.00 for gap insurance.[4] The vehicle is subject to a secured claim held by Fargo. A Georgia Certificate of Title was issued on September 27, 2005, indicating Fargo holds a lien on the vehicle.

Debtor filed for Bankruptcy protection on August 24, 2006. Fargo filed a proof of claim on September 13, 2006 indicating a total claim of $26,493.74.

Debtor's plan only proposes to pay $12,357.00, and as such, does not provide for full payment of Fargo's claim as required by 11 U.S.C. §1325(a)(*). The hanging paragraph of §1325 requires that all PMSIs on vehicles purchased within 910 days of the petition date for a Debtor's personal use must be paid in full.

## CONCLUSIONS OF LAW

This Court has held, with the majority of courts considering the section, that the hanging paragraph of § 1325(a)(*) simply has the effect of precluding debtors from bifurcating undersecured claims using § 506.[5] In each case, the court must determine whether the section applies by inquiring whether the four requirements of the section are satisfied: (1) the creditor has a purchase money security

---

[4] Gap insurance is designed to protect the Debtor from a deficiency in case the vehicle is totaled or stolen and the value of the car is less than the amount owed.

[5] *See In re Murray*, 352 B.R. 340 (Bankr. M.D. Ga. 2006)(Laney, J.).

interest; (2) the debt was incurred within the 910 days preceding the filing of the debtor's case; (3) the collateral for the debt consists of a motor vehicle; and (4) the motor vehicle was acquired for the personal use of the debtor.[6]  It is undisputed that requirements (2), (3), and (4) are met in this case. The only issue left for resolution is whether Fargo holds a PMSI.

To determine whether a creditor holds a PMSI, the court is required to apply state law.[7] As such the court looks to the statutory definition of the term PMSI found at Official Code of Georgia Annotated ("OCGA") §11-9-103, which states in relevant part

> **Purchase money security interest; application of payments; burden of establishing**
> (a) *Definitions*. As used in this Code section, the term:
> > (1) "Purchase money collateral" means goods or software that secures a purchase money obligation incurred with respect to that collateral.
> > (2) "Purchase money obligation" means an obligation of an obligor incurred as all or part of the *price* of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

---

[6] 11 U.S.C. § 1325(a)(*) (2005).
[7] *See In re* Murray, 352 B.R. 340 (Bankr. M.D. Ga. 2006)(Laney, J.).

> (b) *Purchase money security interest in goods.* A security interest in goods is a purchase money security interest:
>> (1) To the extent that the goods are purchase money collateral with respect to that security interest . . . .[8]

Debtors contend that because the debt was incurred not only for the purchase of the vehicle, but also for an extended service contract and gap insurance, the security interest held by Fargo is not a PMSI. In other words, the Debtor claims that these items are not part of the "price" of the collateral. The court disagrees.

Debtor cites to the case of *In re Pajot* for the proposition that the inclusion of gap insurance precludes a lender from having a PMSI in the vehicle.[9] The claim in issue in *Pajot* was objected to on the basis that the lender was financing negative equity. The court in *Pajot* split the claims into secured and unsecured portions corresponding to the purchase price of the new vehicle and the negative equity from the original vehicle traded in.

The court in *Pajot* states clearly that any discussion of extended service contracts and gap insurance is dicta, labeling the section "Digression into gap insurance…."[10] The

---

[8] O.C.G.A. § 11-9-103 (2002) (emphasis added).
[9] 371 B.R. 139, 154 (E.D. Va. 2007).
[10] *Id.*

court does not find the brief discussion in *Pajot* of the nexus between gap insurance, service contracts, and the purchase of a vehicle persuasive.

Debtor also cites to the case of *In re Hunt*.[11] In Hunt, the court held that the financing of negative equity "transformed" the entire debt into non-PMSI debt.[12] However, this court has already addressed the very same issue in the *Graupner* case, discussed *infra*, and reaffirms that conclusion here.

This court heard a similar case in the matter of *In re Murray*.[13] In *Murray*, the court held that the inclusion of an extended service contract and other document fees did not preclude a finding that the creditor held a PMSI and was entitled to §1325(a)(*) protection. The court is comfortable with its findings in *Murray* that these miscellaneous fees can be included in the price of the vehicle without destroying a finding that the creditor holds a PMSI.[14]

In the *Graupner* case, the court held that the financing of negative equity did not preclude the lender

---

[11] 2007 Bankr. Lexis 2709 (D. Ks. 2007).
[12] *Id.*
[13] 352 B.R. 340 (Bankr. M.D. Ga. 2006) (Laney, J.).
[14] *Id.* at 340.

from holding a PMSI.[15] Germane to the discussion was a reading of Georgia's Motor Vehicle Sales Financing Act,[16] which the court read *in pari materia* with the purchase money security interest statute.[17] The court concluded that reading these two statutes together allowed the court to determine whether a lien on a motor vehicle the contract for purchase of which included items other than the sticker price was a purchase money security interest.[18]

The first section of the Motor Vehicle Sales Finance Act ("MVSFA"), O.C.G.A §10-1-31(a)(1) states that the cash sale price may include charges for "accessories and their installation and for delivering, servicing, repairing, or improving the motor vehicle." Applying the *Graupner* standard, the purchase of the service contract fits within the ambit of the MVFSA as a charge for "servicing" the motor vehicle.[19] Accordingly, the purchase of a service contract does not prevent Fargo from holding a PMSI in the motor vehicle.

In this case, a separate charge in the sales contract of $426.00 was added for the inclusion of gap insurance. Fargo, in their letter-brief dated September 26, 2007

---

[15] 356 B.R. 907 (Bankr. M.D. Ga. 2006)(Laney, J.).
[16] O.C.G.A. § 10-1-30 to 42.
[17] O.C.G.A. § 11-9-103.
[18] 356 B.R. 907, 922 (Bankr. M.D. Ga. 2006).
[19] O.C.G.A. § 10-1-31(a)(1).

Case 06-40614    Doc 47    Filed 10/19/07    Entered 10/22/07 08:58:10    Desc Main
                Document      Page 8 of 10

8

argues that gap insurance should be considered an "accessory" under the MVSFA.

The court is aware that ruling otherwise would adversely impact the rights of lenders to hold PMSIs in 910 day vehicles. However, it seems a stretch to include gap insurance as an accessory, as the statute states that it includes "accessories and their installation," clearly indicating the intent that accessories include things like stereos.[20]

The Uniform Commercial Code ("UCC") comment 3 to the purchase money security interest provision expands the meaning of "price" beyond simply the "sticker" cost of the collateral.  The comment provides that:

> [T]he definition of "purchase-money obligation," the "price" of collateral or the "value given to enable" includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations. The concept of "purchase-money security interest" requires a close nexus between the acquisition of collateral and the secured obligation.[21]

Applying the close nexus standard to the case at hand leads the court to believe that gap insurance should be included in the PMSI. Debtor and Creditor entered into a contract for both the vehicle and the gap insurance at the

---

[20] O.C.G.A. § 10-1-31(a)(1).

[21] U.C.C. comm. n.3 to O.C.G.A. 11-9-103 (2002).

same time, and the gap insurance would not exist without the vehicle. Further, the only function of the gap insurance is to protect debtor's investment in the vehicle. Therefore, the court holds that there is a sufficiently close nexus between the acquisition of the car and the gap insurance, and gap insurance should be considered part of the PMSI.

Applying the O.C.G.A. § 10-1-31(a)(1) definition of "cash sale price" to the facts of this case, the monies paid on Debtor's behalf for the extended service contract and gap insurance are part of the purchase price of Debtor's new vehicle for purposes of O.C.G.A. § 11-9-103, Georgia's purchase money security interest statute. The other requirements of O.C.G.A. § 11-9-103 being met, Fargo's security interest in the vehicle is one of purchase money. Thus, § 506 does not apply to allow the debtor to modify the amount of the secured obligation in a Chapter 13 plan.

## CONCLUSION

Fargo's objection to the confirmation of Debtor's Chapter 13 Plan will be SUSTAINED given that Debtor's proposed treatment of Fargo's secured claim violates the anti-bifurcation provision of the hanging paragraph of §1325(a)(*). In accordance with Georgia law, a retail

installment transaction involving the financing of gap insurance and an extended service contract with the purchase of a new vehicle does not preclude the financing creditor or its assignee from holding a PMSI in the new vehicle. The court will further consider the Debtor's plan and any modification to it at the continued confirmation hearing on October 26, 2007 at 9:00 A.M.